**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

DIAMOND A RANCH, WESTERN DIVISION, L.L.C.,
16 Diamond A Drive
Animas, NM 88020; and

GUADALUPE RANCH CORPORATION,
348 S Grande Avenue
Tucson, AZ 85745,

*Plaintiffs*,

v.

CHAD F. WOLF, *in his official capacity* as Secretary, United States Department of Homeland Security
Washington, DC 20528;

MARK A. MORGAN, *in his official capacity* as Acting Commissioner, United States Customs and Border Protection
1300 Pennsylvania Avenue, NW
Room 4.4A
Washington, DC 20229;

RODNEY S. SCOTT, *in his official capacity* as Chief, United States Border Patrol
1300 Pennsylvania Avenue, NW
Washington, DC 20229;

PAUL ENRIQUEZ, *in his official capacity* as Acquisition, Real Estate and Environmental Director, Infrastructure Portfolio, Program Management Office Directorate, United States Border Patrol
24000 Avila Road, Suite 5020
Laguna Niguel, CA 92677;

LTG SCOTT A. SPELLMON, *in his official capacity* as Commanding General, United States Army Corps of Engineers
441 G Street, NW
Room 3K05
Washington, DC 20314;

Civil Action No.:

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

TROY OLSON, *in his official capacity* as Chief of Construction, South Pacific Border District, United States Army Corps of Engineers
Phillip Burton Federal Building
P.O. Box 36023
450 Golden Gate Avenue
San Francisco, CA 94102; and

United States Army Corps of Engineers
441 G Street, NW
Washington, DC 20314-1000,

*Defendants*.

Diamond A Ranch, Western Division, L.L.C. and the Guadalupe Ranch Corporation (collectively, "the Ranch"), file this Complaint seeking declaratory and injunctive relief against Defendants based on their failure to comply with the requirements of the Constitution and laws of the United States in relation to border wall preparation and construction activities adjacent to the Ranch in Arizona. The Ranch alleges as follows through its undersigned attorneys:

**PRELIMINARY STATEMENT**

1. The United States Department of Homeland Security ("DHS"), the United States Customs and Border Protection ("CBP"), and the United States Army Corps of Engineers ("USACE") (collectively, the "Agencies") have failed to comply with the requirements of the Constitution and laws of the United States in relation to their preparations for and construction of a border wall on land adjoining the Ranch's property.

2. The Agencies and their agents and contractors have trespassed onto and destroyed private property belonging to the Ranch without notice, authorization, or process. Incursions onto the Ranch's land continue to this day and constitute a significant intrusion on the Ranch's use and enjoyment of its property.

3. The actions of the Agencies and their contractors also create a significant risk of flooding on the Guadalupe Canyon section of the Ranch. Indeed, if the current activities continue unabated, flooding is not only probable but likely to be so severe as to cut off the Ranch's access to the nearest hospital and other essential services.

4. The Ranch has tried—repeatedly—to engage in good faith negotiations with the Agencies regarding incursions onto and destruction of its property. But, instead of meaningful engagement, the Ranch has been met with lack of action and empty promises. The Agencies have effectively denied the Ranch any hearing or remedy while continuing to trespass on and interfere with the Ranch's use of its property.

5. Through their actions on the Ranch, the Agencies have ignored the requirements of procedural and substantive Due Process provided by the Fifth Amendment to the United States Constitution.

6. The USACE has also stonewalled the Ranch's request for basic documents under the Freedom of Information Act.

**JURISDICTION**

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B). The claims for relief arise under the laws of the United States, including the Fifth Amendment to the Constitution of the United States and the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). The requested relief is authorized pursuant to 28 U.S.C. §§ 1651 and 2201-02, and 5 U.S.C. §§ 552 and 705-06.

## VENUE

8. Venue is proper pursuant to 28 U.S.C. §§ 1391(b) and (e) and 5 U.S.C. § 552(a)(4)(B). Decisions made and/or failures to act by the Agencies in this District have caused a substantial portion of the events or omissions giving rise to the claims.

## PARTIES

9. Plaintiff Diamond A Ranch, Western Division L.L.C. holds property and grazing leases on and near the U.S. border with Mexico that are directly injured by the Agencies' wall construction.

10. Plaintiff Guadalupe Ranch Corporation is located near the U.S. border with Mexico, and depends on a road threatened by the Agencies' wall construction.

11. Defendant Chad F. Wolf, DHS Secretary, is sued in his official capacity. Under federal law, Secretary Wolf is the official ultimately responsible for ensuring that the actions and management decisions of DHS comply with all applicable laws, regulations, and policies.

12. Defendant Mark A. Morgan, Acting Commissioner of CBP, is sued in his official capacity. Under federal law, Acting Commissioner Morgan is the official ultimately responsible for ensuring that the actions and management decisions of CBP comply with all applicable laws, regulations, and policies.

13. Defendant Rodney S. Scott, Chief of the United States Border Patrol, is sued in his official capacity. Under federal law, Chief Scott is the official ultimately responsible for ensuring that the actions and management decisions of the United States Border Patrol comply with all applicable laws, regulations, and policies.

14. Defendant Paul Enriquez, Acquisition, Real Estate and Environmental Director, Infrastructure Portfolio, Program Management Office Directorate, United States Border Patrol, is sued in his official capacity. Under federal law, Director Enriquez is the official ultimately

responsible for ensuring that the actions and management decisions of the Program Management Office Directorate of the Unite States Border Patrol comply with all applicable laws, regulations, and policies.

15. Defendant Scott A. Spellmon, Commanding General of USACE, is sued in his official capacity. Under federal law, General Spellmon is the official ultimately responsible for ensuring that the actions and management decisions of USACE comply with all applicable laws, regulations, and policies.

16. Defendant Troy Olson, Chief of Construction, South Pacific Border District, USACE, is sued in his official capacity. Under federal law, Chief Olson is the official ultimately responsible for ensuring that the actions and management decisions of the South Pacific Border District of USACE comply with all applicable laws, regulations, and policies.

17. Defendant United States Army Corps of Engineers has possession or control over the records the Ranch seeks in its FOIA request.

## APPLICABLE LAW

### I. Procedural Due Process

18. The Fifth Amendment prohibits the federal government from depriving any person "of life, liberty, or property, without due process of law." U.S. Const. amend V. The Due Process Clause affords both substantive and procedural protections. *See, e.g.*, *County of Sacramento v. Lewis*, 523 U.S. 833, 845-46; *North American Butterfly Assoc. v. Wolf*, 977 F.3d 1244, 1265 (D.C. Cir. 2020).

19. A procedural due process violation may occur "when a government official deprives a person of property without appropriate protections—protections that include, at minimum, the basic requirements of notice and an opportunity to be heard." *North American Butterfly*, 977 F.3d at 1265; *see, e.g.*, *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433 (1982);

*Mathews v. Eldridge*, 424 U.S. 319, 333-34 (1976); *Gray Panthers v. Schweiker*, 652 F.2d 146, 165 (D.C. Cir. 1980). The notice provided must inform those affected with reasonable certainty, and the opportunity to be heard must be given "at a meaningful time and in a meaningful manner." *Propert v. District of Columbia*, 948 F.2d 1327, 1332 (D.C. Cir. 1991) (citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)); *Mullane v. Central Hannover Bank & Trust Co.*, 339 U.S. 306, 315 (1950).

20. The precise form of notice and kind of hearing depend upon a balancing of (1) the private interest affected by the government action; (2) the risk of erroneous deprivation and the value of additional safeguards; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. *Mathews v. Eldridge*, 424 U.S. at 321.

21. Most importantly, procedural due process protection focuses on the adequacy of government process "*before* the owner is finally deprived of a protected property interest." *North American Butterfly*, 977 F.3d at 1265-66 (citing *Propert v. District of Columbia*, 948 F.2d 1327, 1331 (D.C. Cir. 1991) (emphasis added).

22. "[A] deprivation occurs by virtue of the government's assertion of control, so a procedural due process claim may be ripe without the government having formally sought or acquired any property interest." *North American Butterfly*, 977 F.3d at 1265. A deprivation of property can occur even where the government does not appropriate the entire plot of privately-owned land. For example, a taking may be regulatory in nature, whereby government action deprives a landowner of all beneficial uses of their property without actually appropriating it. *See Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1017 (1992).

## II. Substantive Due Process

23. Substantive due process "prevents the government from engaging in conduct that shocks the conscience." *U.S. v. Salerno*, 481 U.S. 739, 746 (1987) (citing *Rochin v. California*, 342 U.S. 165, 172 (1952) (internal quotations omitted).

24. Substantive due process prohibits "certain government actions regardless of the fairness of the procedures used to implement them," *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998), and protects citizens against government abuse, *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 119 (1992).

## III. FOIA

25. FOIA creates a broad entitlement to public records to promote transparency and accountability in the federal government.

26. Upon receiving a FOIA request, an agency must "make reasonable efforts to search for" and identify responsive records. 5 U.S.C. § 552(a)(3)(C). Given FOIA's animating policies of transparency and accountability, there is a strong presumption in favor of disclosure.

27. Consistent with its overall policy imperatives, FOIA imposes precise and strict deadlines on agencies that are in receipt of FOIA requests. An agency is required to determine within twenty business days of receiving a FOIA request whether it will comply, and to "immediately notify the person making such request" of its determination and the reasons for it. 5 U.S.C. § 552(a)(6)(A)(i). Only in specific, narrowly defined "unusual circumstances" is the agency permitted to extend this period, and, except in rare cases, any such extension may not exceed ten business days. 5 U.S.C. § 552(a)(6)(B)(i).

28. When an agency determines that there are responsive, non-exempt records, it must then make those records "promptly available" to the requestor. 5 U.S.C. § 552(a)(6)(C)(i).

29. When an agency fails to comply with the deadline to respond to a FOIA request, the requestor is deemed to have exhausted its administrative remedies. At that point, the requestor has two options: it may sue in federal district court, 5 U.S.C. § 552(a)(6)(C)(i), or it may bring an administrative appeal, without prejudice to suing later in the event of an unsuccessful appeal.

## FACTUAL BACKGROUND

30. The Ranch holds property along the U.S. border with Mexico. Its lands include property in Cochise County, Arizona.

31. The Ranch's property includes the Guadalupe Canyon region of the Peloncillo Mountains, which is a unique and widely recognized ecosystem and wildlife migration corridor.

32. The Ranch's property abuts the Roosevelt Reservation, a sixty-foot-wide strip of land along the U.S. border with Mexico in California, Arizona, and New Mexico. First set aside by President Theodore Roosevelt "as a protection against the smuggling of goods between the United States and Mexico," the Reservation has made it relatively easy for the federal government to build infrastructure to prevent illegal border crossings, so long as the construction does not interfere with the rights of landowners outside the Reservation.

### I. Background

33. On January 25, 2017, President Donald J. Trump issued Executive Order No. 13767, entitled "Border Security and Immigration Enforcement Improvements." Exec. Order No. 13767, 82 Fed. Reg. 18 (Jan. 30, 2017). Following a campaign promise to erect a wall between the United States and Mexico, the Order directed DHS to construct a "secure, contiguous, and impassable physical barrier" along the entirety of the nearly 2,000-mile-long United States-Mexico border.

34. On February 20, 2017, former DHS Secretary John Kelly issued a memorandum directing CBP to "immediately begin planning, design, construction, and maintenance of a wall, including the attendant lighting, technology (including sensors), as well as patrol and access roads, along the land border with Mexico in accordance with existing law."

35. The Ranch's property in Cochise County, Arizona falls within Segment 9-5 of what CBP describes as "Fence Construction and Replacement Projects in Cochise, Pima, and Santa Cruz Counties" in CBP's Tucson Sector. CBP plans to build a 4.7-mile stretch of new wall, starting near Douglas, Arizona and continuing towards the border between Arizona and New Mexico.

36. The Agencies' "planning, design, construction, and maintenance" began near the Ranch in 2020. On information and belief, a border wall team from USACE, CBP, and Southwest Valley Constructors ("SWVC") entered Ranch property on February 18, 2020. This team did not stay within the limits of the Roosevelt Reservation. It did not seek or invoke legal authorization to be on Ranch property, nor did it afford the Ranch any process prior to this intrusion. In particular, the team did not attempt to negotiate a right of entry ("ROE"), as CBP has done in the past. Sage Goodwin, one of the Ranch's representatives, objected soon after he learned of the team's presence on private property. This objection, however, had no effect.

37. Construction began in early July 2020. Shortly thereafter, SWVC personnel and equipment began operating on ranch property outside the Roosevelt Reservation. Heavy equipment drove on Ranch property and by late July 2020 began dropping large demolition debris on Ranch property outside of the Reservation.

38. The Agencies' construction activities have created, and continue to create, two particularly damaging impacts on the Ranch.

## II. Debris Intrusions

39. The portions of the Ranch that border the Roosevelt Reservation, in particular within Guadalupe Canyon and its uplands, are remote, inhospitable, and mountainous. In many portions of the proposed border wall, grades before construction began were so steep that the land was accessible only by foot and mule. Even now, after rough construction, or pioneering, has begun, it can be traveled only with tracked vehicles. This rugged terrain has made construction extraordinarily expensive: one public affairs officer with the USACE estimated that building this 4.7-mile section of wall will cost taxpayers roughly $41 million per mile.

40. To build the wall, the Agencies and their contractors must level the steep terrain to the point where construction is possible. To do so, they first plant tons of explosives and blast large portions of hillsides into the valleys below. They then must build retaining walls up to thirty feet tall to make a level road, with the necessary grade and ability to support the weight of construction vehicles, and ultimately the wall itself.

41. Predictably, these efforts within the Roosevelt Reservation have had, and continue to have, a substantial impact on the Ranch's adjacent private property. Clouds of demolition dust, shrapnel, and car-sized boulders have come tumbling down from the Roosevelt Reservation onto Ranch property. Overall, tons of debris have entered private property.

42. The Ranch and its representatives have made repeated efforts to consult with the Agencies and their contractors to prevent or mitigate the impact of the intrusions. None of these efforts has been met with a good faith response.

43. On information and belief, Defendants have made no serious effort to remediate the impact of their intrusions.

44. The blasting intrusions on the Ranch's property were and are not authorized by any statutory or other authority.

45. On information and belief, the blasting intrusions on the Ranch's property were exacerbated significantly by the Agencies' and SWVC's decision to not use blast mats to contain the fallout of construction debris.

**III. Flooding**

46. A portion of the proposed wall crosses Guadalupe Creek, which flows south through Guadalupe Canyon into Mexico. The Ranch owns the property through which Guadalupe Creek runs, all the way to the point where it crosses the Roosevelt Reservation on its way into Mexico. Guadalupe Creek is seasonal. Sometimes it is completely dry. But, in rainy seasons, it can, and periodically does, become a raging river capable of carrying boulders, large trees, and other debris.

47. Construction of a border wall across the path of Guadalupe Creek is almost certain to lead to flooding. Guadalupe Canyon can channel a large volume of water into a confined space, and add significant debris along the way in the form of trees, rocks, and dirt. Thus, there is a grave risk that this debris will jam and block a comparatively narrow culvert. Severe floods have occurred at this site even with no manmade obstructions in the path of the water. Designing a culvert that does not produce much worse intrusions on Ranch property will require enormous care.

48. Seasonal flooding caused by faulty culvert design will intrude on the Ranch's property. Guadalupe Creek runs alongside the Ranch's private road, which the Ranch's owners and residents use to reach hospitals, supplies, and other critical services. Flooding has the potential to wash away the road and cut the Ranch off from the outside world. And given how close the Creek and the Road are to the proposed wall site, even a slight miscalculation could have a dramatic effect on the Ranch.

49. The Ranch has consistently expressed concern that the Agencies have not taken sufficient steps to design the wall at this point so as to prevent flooding of Ranch property.

50. The Agencies have stated that they intend to address the risk of flooding with concrete box culverts (three 12'x14' culverts and four 12'x10' culverts). On information and belief, the Agencies have not completed sufficient hydrologic studies necessary to determine what culvert size and design will be needed to prevent flooding of Ranch property. Nor have the Agencies shared adequate information on the studies or the designs that are essential to protect the Ranch's property and indeed the lives of its inhabitants from flooding caused by the Agencies' construction. The Agencies have not even asked for, let alone taken account of, the rainfall records maintained by the Ranch for Guadalupe Canyon. Rainfall in the canyon watershed is often different from rainfall in other parts of the region; this data has been offered to the Agencies but the Agencies have not requested it.

51. The probable impacts on the Ranch's land are not authorized by any statutory or other authority.

## IV. The Agencies' Bad-Faith Dealings with the Ranch

52. The Ranch is not a political organization, and it has not filed this lawsuit out of opposition to CBP's mission. The Ranch has been adversely affected in the past by illegal border crossings and has supported efforts to improve border security and deter illegal border crossings.

53. From the earliest stage, the Ranch attempted to engage with the Agencies to minimize impacts to its property while allowing them to do their jobs.

54. On information and belief, the Agencies' and SWVC's engagement with the Ranch has been designed to deceive the Ranch into believing that the Agencies genuinely

intended to protect the Ranch's property, while in fact speeding destructive construction practices at all costs in the hope of creating a *fait accompli* beyond any remedy by a court.

55. This pattern of behavior can be traced back as far as February 2020, when Ranch representative Sage Goodwin objected to Agency and SWVC intrusions onto Ranch property. Despite his objections, and a series of apparently constructive conversations with representatives of the Agencies and SWVC, nothing changed; the intrusions continued, and neither the Agencies nor SWVC sought to negotiate ROEs.

56. This behavior intensified when construction adjacent to the Ranch began in July 2020. Construction proceeded from west to east, soon reaching an outcropping the Ranch refers to as Apache Lookout. By late July, construction on Apache Lookout was pushing dust and tons of debris onto Ranch property.

57. On information and belief, neither the Agencies nor the SWVC acted to ensure that construction workers honored the boundaries of the Roosevelt Reservation. Intrusions onto the Ranch's property by individuals and heavy equipment acting for the Agencies were frequent.

58. Defendants performed a survey to reconfirm the Roosevelt Reservation's boundaries only after receiving an August 19, 2020 letter from U.S. Senators Martin Heinrich and Tom Udall asking pointed questions about their blasting and damage to private property. Many of the boundary markers were soon obliterated in the areas of most active construction.

59. In September 2020, Paul Enriquez and other Agency representatives offered oral assurances that the trespassing and rockfalls would cease.

60. The rockfalls were of particular concern to the Ranch because construction had by then begun on a large feature that has recently been dubbed Shadow Mountain. Shadow Mountain is extremely steep, and the border with Mexico runs along its north-facing slope, so

any debris displaced from the Roosevelt Reservation rolls far down the hill onto Ranch property. The Ranch's representatives wanted assurances that a road and a foundation for the wall could be carved from that slope without pushing large quantities of debris out of the Reservation.

61. On September 10, 2020, Sage Goodwin and Sadie Hadley, another Ranch representative, met with Paul Enriquez and other Agency and SWVC representatives. At this meeting, the Agencies promised the Ranch that the rockfalls were "unacceptable" and would not happen again.

62. On September 30, 2020, USACE promised a group of local property owners and other participants that it would share its hydrological studies for its culvert design in Guadalupe Canyon with participants, including the Ranch. It has not done so.

63. On October 14, 2020, Paul Enriquez sent a final email to Sage Goodwin. He invoked construction standards for "return[ing] temporary construction areas to preconstruction conditions." How—or whether—these standards will be applied to the Ranch's property has never been discussed with the Ranch. The email also noted that SWVC had "developed plans" to catch debris falling from its construction. It further mentioned an "initial drainage report" on the culvert design that it did not provide.

64. The Ranch's representatives were hopeful that this email meant the Agencies would take their concerns into account and stop the explosions blasting debris onto the Ranch's property.

65. They were mistaken. The Agencies and SWVC carried out some of the largest and most destructive blasts shortly after the Agencies promised to stop the intrusions. On October 22, for example, SWVC and its subcontractors buried 5,220 pounds of explosives in eighty seven holes, mere feet from Ranch property, and detonated them, throwing tons of rocks

downhill on the Ranch. A video of this blast is *available at* https://www.youtube.com/watch?v=WMWdTjLWJYU&feature=youtu.be.

66. Subsequent complaints to the Agencies have failed to result in concrete steps to reduce the danger of future damage to the Ranch's property.

67. Complete restoration to preconstruction conditions is not possible, given the level of damage to the landscape.

68. No plans to catch debris falling from SWVC's construction have actually been implemented, or if they have, they have failed.

69. No hydrologic studies or drainage reports have been provided to the Ranch.

70. The Ranch has experienced daily intrusions on its property for months. Some of these intrusions have been extraordinarily destructive. The Ranch has consistently objected to the construction practices causing the harm.

71. Throughout this period, the Agencies offered the Ranch many protestations of concern and good faith, as well as promises that no intrusions on the Ranch's property were authorized or acceptable. Yet the construction and the intrusions have continued without change.

72. The Ranch expects these practices to continue in the future, given that construction is far from complete. In addition to aggressive pioneering with extensive blasting, construction will require grading, trenching, and construction of retaining walls on steep slopes that are nearly certain to produce additional rockfalls onto Ranch property.

## V. FOIA

73. In early August, the Ranch's attorney asked the U.S. Army Corps of Engineers for a copy of the contract that governed operations in the Roosevelt Reservation in an effort to learn what conditions had been imposed on the contractor to protect the Ranch's property. The USACE refused to make the contract available, saying that a FOIA request for the document was

necessary. On August 14, 2020, therefore, the Ranch submitted a FOIA request to FOIA Officers at the USACE's South Pacific Division and Humphreys Engineer Support Center. This request is attached as Exhibit A.

74. The FOIA request sought "Contracts and related attachments, exhibits, and annexes, including but not limited to design-build agreements and conditions imposed on the contractor, related to the Tucson Sector Barrier Wall Replacement Project," which is identified within the USACE by number W912PL-19-C-0015.

75. The FOIA request sought to reduce the burden on the USACE by limiting its request to projects occurring adjacent to the Ranch's lands. It identified those lands in four alternative ways, including GPS coordinates, to make certain that the FOIA officers could identify the correct property.

76. On August 21, 2020, a FOIA Officer in the USACE's Fort Worth District responded to the Ranch's counsel: "All contract documents must be coordinated with the primary contractor pursuant to Executive Order 12,600. Since this is regarding the Border Wall construction, it must also be coordinated with other agencies so it will take a little while to provide you with the requested information." This email is attached as Exhibit B.

77. After a follow-up question from the Ranch's counsel, the FOIA officer informed him that: "There is a backlog of Border requests and not much has been released to date."

78. There is no provision in FOIA allowing the USACE, or any other agency, to delay its responses to FOIA requests because they are related to the Border Wall or because of accountability-dispersing "coordination" agreements with other parties.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF: VIOLATION OF PROCEDURAL DUE PROCESS

***Against Defendants Wolf, Morgan, Scott, Enriquez, Spellmon, and Olson***

79. Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

80. Defendants and/or their agents did not give the Ranch adequate notice or an opportunity to be heard prior to their ongoing intrusions on the Ranch's property. Defendants have caused tons of debris to be dropped on the Ranch's property without any prior authorization or good faith engagement to prevent or mitigate the effects of the intrusion.

81. Defendants have damaged and destroyed and/or instructed their agents to pursue activities regardless of damage and destruction to the Ranch's property without prior authorization.

82. Defendants have not taken meaningful action to prevent continued incursions onto and damage of the Ranch's property.

83. Defendants have not provided the Ranch with any watershed analysis, information related to the flooding risk, or the adequacy of the proposed box culvert in Guadalupe Creek, despite multiple requests for discussions on this subject from the Ranch. The design of the proposed box culvert is critical, as it has the potential to substantially interfere with the Ranch's use and enjoyment of its property.

## SECOND CLAIM FOR RELIEF VIOLATION OF SUBSTANTIVE DUE PROCESS

***Against Defendants Wolf, Morgan, Scott, Enriquez, Spellmon, and Olson***

84. Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

85. Defendants and/or their agents repeatedly made false promises to the Ranch about taking steps to end the incursions, followed by continuing and even more serious destructive incursions onto the Ranch's private property, all in an effort to prevent the Ranch from

successfully asserting its legal rights and to enable further, even more serious, incursions onto and destruction of the Ranch's private property.

86. Defendants' conduct shocks the conscience. This is not how a constitutional government treats its citizens. Rather, it is egregious governmental misconduct that violates the substantive Due Process Clause.

**THIRD CLAIM FOR RELIEF**
**FREEDOM OF INFORMATION ACT**
***Against USACE***

87. Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

88. USACE is an agency or component thereof required to promptly disclose responsive records in its possession at the time of a request, 5 U.S.C. § 552(a)(3)(A).

89. USACE has violated the requirements of FOIA by not providing the record requested by the Ranch within twenty (20) working days.

90. The Ranch has exhausted its administrative remedies, 5 U.S.C. § 552(a)(6)(C)(i). Yet, USACE continues not to respond and to wrongfully withhold the requested records.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Guadalupe Ranch Corporation and Diamond A Ranch, Western Division, L.L.C., pray that this Court:

A. Declare that Defendants have violated the Ranch's procedural due process rights by failing to provide the Ranch with adequate notice and an opportunity to be heard prior to their incursions onto and destruction of the Ranch's property;

B. Declare that the Defendants have violated the Ranch's substantive due process rights by engaging in behavior that shocks the conscience, including, *inter alia*, making false promises to the Ranch that have enabled further and more serious damage to the Ranch's property;

C. Enjoin Defendants and their agents from entering Ranch property without the reasonable consent of Ranch representatives;

D. Enjoin Defendants from border wall construction directly adjacent to the Ranch's property, unless and until Defendants provide, in good faith:

i. Notice of any further intrusions on Ranch land that are planned or possible as a result of wall construction;

ii. Any hydrologic studies or other engineering and design work carried out or contemplated for Guadalupe Canyon, and an assessment of the risk that wall and culvert system now planned will cause or exacerbate floods that intrude on Ranch property and the Ranch's private road;

iii. Notice of the Agencies' plans and proposed practices to prevent further intrusions on Ranch property, including any contractual or other mechanisms for ensuring that those plans are strictly implemented by the Agencies and any contractors working on their behalf;

iv. A meaningful hearing in the form of good faith negotiations with an authorized senior Agency representative, resulting in the adoption of a reasonable and binding plan to (1) protect Ranch property from further intrusions and (2) remediate past damage from unauthorized intrusions;

v. Adoption of a written record of the results of the negotiations, including the specifics of the plan adopted as a result of the negotiations.

E. Order Defendant USACE to immediately

i. Conduct a reasonable search for all records responsive to Plaintiffs' FOIA request;

ii. Produce any and all non-exempt records or portions thereof responsive to Plaintiffs' request, as well as indices of any records or portions of records withheld on the basis of a claimed exemption;

iii. Cease any improper withholding of records responsive to Plaintiffs' request;

F. Award reasonable attorney's fees and costs under 5 U.S.C. § 552(a)(4)(E); and

G. Grant other relief as the Court may deem just and proper.

Dated: November 30, 2020

Respectfully Submitted,

/s/ *Stewart A. Baker*

Stewart A. Baker (D.C. Bar No. 262071)
Lia Metreveli (application forthcoming)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Tel: (202) 429-3000
Fax: (202) 429-3902
Email: sbaker@steptoe.com
Email: lmetreveli@steptoe.com

David Hirsch (*pro hac vice* application forthcoming)
STEPTOE & JOHNSON LLP
1114 6th Avenue
New York, NY 10036
Tel: (212) 506-3900
Email: dhirsch@steptoe.com