PAUL E. SALAMANCA
Deputy Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division

TYLER M. ALEXANDER (CA 313188)
Trial Attorney
Natural Resources Section
Environment & Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044-7611

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DIAMOND A RANCH, WESTERN DIVISION, L.L.C., *et al.*, | ) ) ) | Case No. 1:20-CV-03478-CRC |
| Plaintiffs; | ) ) ) | DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER |
| v. | ) ) | AND PRELIMINARY INJUNCTION |
| CHAD F. WOLF, *et al.*, | ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 2

STANDARD OF REVIEW ........................................................................................... 6

ARGUMENT ................................................................................................................. 7

     I.     Plaintiffs Have No Likelihood of Success on their Due Process Claims ............... 7

          A.     The Due Process Clause................................................................. 7

          B.     Trespass or Negligence by Government Officers or Contractors
                Does Not Violate the Due Process Clause .................................. 8

          C.     Plaintiffs Have Adequate Post-Deprivation Remedies Available
                through the FTCA or an Inverse Condemnation Proceeding..................... 9

          D.     Plaintiffs' Substantive Due Process Claim is Meritless........................... 13

     II.     Plaintiffs Fail to Show Irreparable Harm............................................... 14

     III.     The Balance of Equities and Public Interest Weigh Against an Injunction.......... 18

CONCLUSION...................................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Am. Coastal Line Joint Venture, Inc. v. U.S. Lines, Inc.*,
  580 F. Supp. 932 (D.D.C. 1983) ........................................................................... 7

*Amsden v. Moran*,
  904 F.2d 748 (1st Cir. 1990) ............................................................................... 19

*Anderson v. United States*,
  259 F. Supp. 148 (E.D. Pa. 1966) ....................................................................... 15

*Andree v. Ashland County*,
  818 F.2d 1306 (7th Cir. 1987) ............................................................................ 12

*Ark. Game & Fish Comm'n v. United States*,
  568 U.S. 23 (2012) ............................................................................................. 23

*Arpaio v. Obama*,
  797 F.3d 11 (D.C. Cir. 2015) ............................................................................. 24

*Bailey v. Anderson*,
  326 U.S. 203 (1945) ........................................................................................... 16

*Bd. of Regents of State Colleges v. Roth*,
  408 U.S. 564 (1972) ........................................................................................... 11

*Bragg v. Weaver*,
  251 U.S. 57 (1919) ............................................................................................. 16

*Burton–Bey v. United States*,
  100 F.3d 967 (10th Cir.1996) ............................................................................. 10

*Cal. Ass'n of Private Postsecondary Schools v. DeVos*,
  344 F. Supp. 3d 158 (D.D.C. 2018) .................................................................... 19

*California v. Trump*,
  407 F. Supp. 3d 869 (N.D. Cal. 2019) ................................................................ 27

*Chaplaincy of Full Gospel Churches v. England*,
  454 F.3d 290 (D.C. Cir. 2006) ................................................................. 7, 20, 22

*Ciampi v. Zuczek*,
  598 F. Supp. 2d 257 (D.R.I. 2009) ........................................................... 9, 17, 19

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ............................................................................................. 21

*Clapper v. Amnesty Int'l*,
  568 U.S. 398 (2013) ........................................................................................... 24

*Clark v. Boscher*,
514 F.3d 107 (1st Cir. 2008) ........................................................................ 17

*Collier v. City of Springdale*,
733 F.2d 1311 (8th Cir. 1984) ...................................................................... 12

*Competitive Enters. Inst. v. U.S. Dep't of Agric.*,
954 F. Supp. 265 (D.D.C. 1996) ..................................................................... 7

*Ctr. for Food Safety v. Vilsack*,
636 F.3d 1166 (9th Cir. 2011) ...................................................................... 20

*Cty. of Sacramento v. Lewis*,
523 U.S. 833 (1998) ................................................................... 10, 11, 18, 19

*Daniels v. Williams*,
474 U.S. 327 (1986) ........................................................................ 10, 11, 12

*Davis v. Pension Benefit Guar. Corp.*,
571 F.3d 1288 (D.C. Cir. 2009) ...................................................................... 8

*Dickson v. Mattera*,
38 Fed. App'x 21 (D.C. Cir. 2002) .................................................................. 9

*El Paso Cty., Texas v. Trump*,
No. 19-51144, 2020 WL 7090797 (5th Cir. Dec. 4, 2020) ........................... 27

*Fulcher v. United States*,
632 F.2d 278 (4th Cir.1980) ........................................................................ 17

*Gas Co. v. FERC*,
758 F.2d 669 (D.C. Cir. 1985) ..................................................................... 22

*Hudson v. Palmer*,
468 U.S. 517 (1984) ........................................................................ 9, 10, 13, 24

*Joslin Mfg. Co. v. City of Providence*,
262 U.S. 668, (1923) ................................................................................... 16

*Konarski v. Donovan*,
763 F. Supp. 2d 128 (D.D.C. 2011) ................................................................ 6

*La Posta Band of Diegueno Mission Indians of La Posta Reservation v. Trump*,
828 F. App'x 489 (9th Cir. 2020) ................................................................. 27

*League of Women Voters v. Newby*,
838 F.3d 1 (D.C. Cir. 2016) ......................................................................... 20

*Levin v. United States*,
568 U.S. 503 (2013) .................................................................................... 13

*McNeil v. United States*,
508 U.S. 106 (1993) .................................................................................... 14

*Melton v. United States*,
    488 F. Supp. 1066 (D.D.C. 1980) ................................................................ 15

*Munaf v. Green*,
    553 U.S. 674 (2008) .......................................................................................... 6

*Nat'l Fair Housing All. v. Carson*,
    330 F.Supp.3d 14 (D.D.C. 2018) ................................................................. 20

*Nat'l Treasury Employees Union v. Von Raab*,
    489 U.S. 656 (1989) ........................................................................................ 25

*Nazelrod v. Garrett Cty. Sanitary Dist., Inc.*,
    241 F. Supp. 2d 532 (D. Md. 2003) .......................................................... 18

*Nken v. Holder*,
    556 U.S. 418 (2009) ................................................................................. 25, 26

*Oliver v. United States*,
    466 U.S. 170 (1984) ........................................................................................ 12

*Orange v. D.C.*,
    59 F.3d 1267 (D.C. Cir. 1995) .................................................................... 10

*Parker v. Brown*,
    706 F. Supp. 2d 125 (D.D.C. 2010) ............................................................. 9

*Parratt v. Taylor*,
    451 U.S. 527 (1981) ........................................................................................ 13

*Paul v. Davis*,
    424 U.S. 693 (1976) ........................................................................................ 19

*Presley v. City of Charlottesville*,
    464 F.3d 480 (4th Cir. 2006) ...................................................................... 16

*Rason v. Nicholson*,
    562 F. Supp. 2d 153 (D.D.C. 2008) ............................................................. 9

*Robbins v. Bureau of Land Mgmt.*,
    252 F. Supp. 2d 1286 (D. Wyo. 2003) ................................................ 10, 11

*Rochin v. California*,
    342 U.S. 165 (1952) ........................................................................................ 17

*Rodriguez-Mora v. Baker*,
    792 F.2d 1524 (11th Cir. 1986) .................................................................. 14

*Schrier v. Univ. Of Co.*,
    427 F.3d 1253 (10th Cir. 2005) .............................................................. 21, 23

*Schroeder v. City of New York*,
    371 U.S. 208 (1962) ........................................................................................ 16

*Sea Containers Ltd. v. Stena AB*,
  890 F.2d 1205 (D.C. Cir. 1989) .................................................................. 7

*Sherley v. Sebelius*,
  644 F.3d 388 (D.C. Cir. 2011) ..................................................................... 7

*Sierra Club v. Trump*,
  379 F. Supp. 3d 883 (N.D. Cal. 2019) ...................................................... 26

*Sierra Club v. U.S. Dept. of Energy*,
  825 F. Supp. 2d 142 (D.D.C. 2011) .......................................................... 21

*Slate v. D.C.*,
  79 F. Supp. 3d 225 (D.D.C. 2015) ............................................................ 14

*Stuto v. Fleishman*,
  164 F.3d 820 (2d Cir. 1999) ...................................................................... 13

*Timberline Nw., Inc. v. Hill*,
  141 F.3d 1179 (9th Cir. 1998) ................................................................... 14

*Trump v. Sierra Club*,
  140 S. Ct. 1 (2019) .................................................................................... 26

*Trump v. Sierra Club*,
  140 S. Ct. 2620 (2020) .............................................................................. 26

*United States v. Guzman-Padilla*,
  573 F.3d 865 (9th Cir. 2009) ..................................................................... 25

*United States v. James Daniel Good Real Prop.*,
  510 U.S. 43 (1993) ...................................................................................... 9

United States, *Simons v. United States*,
  431 F.2d 531 (5th Cir. 1969) ..................................................................... 14

*Walters v. Wolf*,
  660 F.3d 307 (8th Cir. 2011) ..................................................................... 14

*Weinberger v. Romero-Barcelo*,
  456 U.S. 305 (1982) ................................................................................... 25

*Winter v. Natural Res. Def. Council*,
  555 U.S. 7 (2008) ................................................................ 6, 7, 21, 25, 27, 28

*Wise v. Bravo*,
  666 F.2d 1328 (10th Cir. 1981) ................................................................. 12

*Zinermon v. Burch*,
  494 U.S. 113 (1990) .................................................................................... 9

**Statutes**

10 U.S.C. §§ 271–84 ........................................................................................ 3

28 U.S.C. § 1346(a)(2) ................................................................................................. 12

28 U.S.C. § 1491(a)(1) ................................................................................................. 12

28 U.S.C. §§ 1346(b)(1) .............................................................................................. 10

8 U.S.C. § 1103 ............................................................................................................. 2

82 Fed. Reg. 8793 (Jan. 25, 2017) .............................................................................. 3

Pub. L. No. 104-208 ...................................................................................................... 2

Pub. L. No. 109-13 ........................................................................................................ 2

Pub. L. No. 109-367 ...................................................................................................... 2

Pub. L. No. 110-161 ...................................................................................................... 2

**Other Authorities**

H.R. Rep. No. 103-200
    1993 WL 298896 (Jan. 29, 2019) ....................................................................... 3, 4

Presidential Memorandum,
    2018 WL 1633761 (Apr. 4, 2018) .......................................................................... 3

## INTRODUCTION

Enormous quantities of illegal drugs are flowing into our Nation across the southern border.  In response to this crisis, and in accordance with longstanding statutory authority, the Department of Homeland Security (DHS) asked the Department of Defense (DoD) to support DHS's counter-narcotics operations by constructing fences and roads and installing lighting in Cochise County, Arizona.  Plaintiffs in this case—private landowners whose parcels are adjacent to construction sites on federal land—seek to halt that work.  Their motion for a preliminary injunction should be denied because they cannot show a likelihood of success on the merits of their due process claims or an imminent, irreparable injury, and because the equities tilt sharply in favor of the government.

Plaintiffs have no likelihood of success on the merits of their procedural or substantive due process claims.  First, the Due Process Clause is simply not implicated by negligence or trespass by federal officers or contractors.  Second, even if implicated, Plaintiffs have at least two meaningful post-deprivation remedies: (1) an action at tort under the Federal Tort Claims Act or (2) an inverse condemnation proceeding under the Tucker Act.  Third, Plaintiffs' substantive due process claim is meritless; negligence and trespass do not "shock the conscience" and Plaintiffs provide no evidence supporting their allegations that federal officials have intentionally harmed them.  That Plaintiffs' claims fail ends the emergency injunction inquiry.

Nor can Plaintiffs show they face an imminent, irreparable injury in the absence of preliminary relief.  Plaintiffs focus chiefly on rock blasting above their parcels.  But all blasting activity adjacent to Plaintiffs' lands was completed on November 19, 2020.  While there is ongoing construction activity, the contractor will implement mitigation measures designed to

prevent both large boulders and smaller materials from falling onto Plaintiffs' property.  More fundamentally, Plaintiffs make no effort to show that construction impacts on their properties are irreparable.  Rockfall can be removed and the area can be restored, and Plaintiffs offer no argument to the contrary beyond conclusory statements.  Finally, Plaintiffs' speculative allegations about someday impacts from the Guadalupe Creek crossing are also insufficient for the preliminary relief they seek.  Since the December 7, 2020 hearing, the construction schedule has been pushed back to allow for additional review of the culvert design.  Construction will not begin until mid-February at the earliest, and before then Plaintiffs will have an opportunity to review the final design and provide input.

The remaining preliminary injunction factors also favor Defendants, who have compelling interests in border security, drug interdiction, and preventing cross-border criminal activity.  Those interests outweigh the harm from possible rockfall on remote and rugged areas of Plaintiffs' parcels or any incremental increase in flood risk associated with the Guadalupe Creek crossing.  Plaintiffs cannot carry their burden on any of the preliminary injunction factors.  The Court should reject Plaintiffs' motion for the extraordinary remedy of an emergency injunction.

## STATEMENT OF FACTS

In 1996, Congress passed section 102 of IIRIRA and amended it several times thereafter to provide DHS with broad authority to construct border barrier infrastructure along the southern border.  *See* Pub. L. No. 104-208, Div. C, Title I § 102, 110 Stat. 3009-554 (Sept. 30, 1996), *as amended by* Dep't of Homeland Security Appropriations Act, 2008, Pub. L. No. 110-161, Div. E, Title V § 564, 121 Stat. 2090 (Dec. 26, 2007); Secure Fence Act of 2006, Pub. L. No. 109-367, § 3; REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, Title I § 102, 119 Stat. 231, 302, 306 (May 11, 2005) (codified at 8 U.S.C. § 1103 note).  Section 102(a) of IIRIRA currently directs

the Secretary of Homeland Security to "take such actions as may be necessary to install additional physical barriers and roads . . . in the vicinity of the United States border to deter illegal crossings in areas of high illegal entry into the United States." In addition, Congress ordered DHS to "construct reinforced fencing along not less than 700 miles of the southwest border where fencing would be most practical and effective." IIRIRA § 102(b)(1)(A).

Congress also has expressly authorized DoD to provide a wide range of support to DHS at the southern border. *See, e.g.*, 10 U.S.C. §§ 271–84. For decades, U.S. military forces have played an active role in barrier construction. Military personnel were critical to construction of the first modern border barrier near San Diego in the early 1990s, as well as other more recent border fence projects. *See, e.g.,* H.R. Rep. No. 103-200, at 330–31, 1993 WL 298896 (commending DoD for its role in construction of the San Diego primary fence).

On January 25, 2017, the President issued an Executive Order directing federal agencies "to deploy all lawful means to secure the Nation's southern border." Border Security and Immigration Enforcement Improvements, Exec. Order No. 13767, 82 Fed. Reg. 8793 (Jan. 25, 2017). The Order required agencies to "take all appropriate steps to immediately plan, design and construct a physical wall along the southern border." *Id.* at 8794.

On April 4, 2018, the President issued a memorandum titled, "Securing the Southern Border of the United States." Presidential Memorandum, 2018 WL 1633761 (Apr. 4, 2018). The President stated "[t]he security of the United States is imperiled by a drastic surge of illegal activity on the southern border." *Id.* at *1. The President directed DoD to support DHS in "securing the southern border and taking other necessary actions to stop the flow of deadly drugs and other contraband, gang members and other criminals, and illegal aliens into this country." *Id.* at *2.

The Secretary of DHS has determined that the United States Border Patrol Tucson Sector is an area of high illegal entry.  Decl. of Paul Enriquez, Exhibit 1 (Enriquez Decl.) ¶ 6.  And the office of Drug Control Policy has identified Cochise County, Arizona as a "High Intensity Drug Trafficking Area."  *Id.*  For these reasons, DHS has a statutory duty "to construct physical barriers and roads to deter and prevent illegal entry of people and drugs into the United States." *Id.* ¶ 7.  To this end, on January 12, 2020, in accordance with applicable law, DHS requested DoD's assistance to construct 38 discrete border barrier project segments located in drug-smuggling corridors along the southern border.  *Id.* ¶ 8.  The Secretary of Defense approved 31 of those projects for construction.  *Id.* ¶ 9.  The United States Army Corps of Engineers (Corps) contracts with construction firms to install the requested border infrastructure.  Second Decl. of Col. Antoinette R. Gant, Exhibit 2 (Second Gant Decl.) ¶ 9.  The border infrastructure at issue in this case is among those projects.

For the past ten months, CBP has been conducting outreach and coordination with stakeholders, including Plaintiffs, through meetings, letters, emails, and site visits.  Enriquez Decl. ¶ 15.  For example, on June 10, the agencies and the contractor held a teleconference to provide status updates on construction and design efforts for the project.  Second Gant Decl. ¶ 10.  And there is ongoing consultation regarding the culvert design for the crossing at Guadalupe Creek.  Enriquez Decl. ¶ 20.  Throughout the construction process the government has listened to Plaintiffs' concerns and attempted to address them.  *Id.* ¶¶ 15-16.

Because of the rugged nature of the terrain in Tucson A-5, rock blasting was necessary along certain stretches, including above portions of Plaintiffs' properties.[1]  Second Gant Decl.

---

[1] Contrary to Plaintiffs' allegations, this blasting was conducted safely.  The contractor provides both pre- and post- shot reports, which contain details on the weather, the amount of explosives used, the types of materials being blasted, and estimates of the peak particle velocity from the

¶ 27.  Blasting adjacent to Plaintiffs' parcels was completed on November 19; remaining blasting work is well east and moving farther away.  *Id.* ¶¶ 7, 19.  During the blasting work, the contractor took steps to keep blasting debris and boulders on federal land.  *Id.* ¶ 27(c).  Where possible, the contractor relied on a natural catch point within the excavation pattern in the form of a v-shaped ditch, which prevented the majority of post-blast material from entering Plaintiffs' property.  *Id.*.[2]  Defendants do not dispute that this was not entirely successful and maintain that the rockfall on Plaintiffs' property was unacceptable to the federal agencies.  Enriquez Decl. ¶ 18.  Likewise, Defendants remain committed to remediating rockfall on Plaintiffs' lands.  Second Gant Decl. ¶ 28(c).

The Project also contemplates a crossing at Guadalupe Creek.  *Id.* ¶ 29.  As Plaintiffs acknowledge, the area in question is already prone to flooding during very heavy rains, Pls.' Br. 9-10, and Defendants are "aware of the potential for flooding in close proximity to [the crossing.]" Second Gant Decl. ¶ 30.  To mitigate the risk of debris clogging culverts, Defendants are currently considering design features that will allow debris to pass through without clogging the waterways.  *Id.* ¶ 34.  Extended review has pushed the construction date back until mid-February at the earliest.  *Id.* ¶ 30.  Plaintiffs will have an opportunity to review the final design, as well as the Hydrologic & Hydraulic Report, and provide comments.  *Id.* ¶ 37.

---

blast.  Gant Decl. ¶ 26.  The Corps carefully reviews these reports to ensure safe blasting operations.  *Id.*

[2] Plaintiffs argue the contractor should have employed blast mats as an additional mitigation measure.  Blast mats are large, thick mats comprised of heavy plastics and steel cables, and can be an effective tool in mitigating the noise and debris impacts of blasting when employed on flat ground.  Gant Decl. ¶ 27(d).  But when used on slopes, the weight of blast mats is not evenly distributed and can result in unsafe redirection of the blast force.  *Id.*  During planning, the contractor determined that the use of blast mats here presented an unacceptable risk to operator health and safety, and the Corps agreed.  *Id.*  For this reason, the contactor did not use blast mats but instead relied on clean fill to attempt to direct the blasting force.  *Id.*

## STANDARD OF REVIEW

A preliminary injunction is an extraordinary and drastic remedy, never available as of right. *Munaf v. Green*, 553 U.S. 674, 689 (2008) (citation omitted); *see also Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008). "As an extraordinary remedy, courts should grant such relief sparingly," *Konarski v. Donovan*, 763 F. Supp. 2d 128, 133 (D.D.C. 2011), and "the party seeking injunctive relief bears a substantial burden to show that the party is entitled to such an extraordinary remedy." *Competitive Enters. Inst. v. U.S. Dep't of Agric.*, 954 F. Supp. 265, 269 (D.D.C. 1996); *accord Am. Coastal Line Joint Venture, Inc. v. U.S. Lines, Inc.*, 580 F. Supp. 932, 935 (D.D.C. 1983) ("the plaintiff has a substantial burden of proof in order to demonstrate its right to such relief."); *Sea Containers Ltd. v. Stena AB*, 890 F.2d 1205, 1208 (D.C. Cir. 1989) ("An injunction should issue only where the intervention of a court of equity is essential in order effectually to protect property rights against injuries otherwise irremediable." (quotation omitted)).

This circuit applies the traditional four-part test for issuing a preliminary injunction. The party seeking preliminary relief must show: (1) a substantial likelihood of success on the merits; (2) that he would suffer irreparable injury if the injunction were not granted; (3) that the balance of the equities tips in his favor; and (4) that the public interest would be furthered by the injunction. *Winter*, 555 U.S. at 10; *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011); *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). The movant has the burden to show that all four factors are satisfied by clear and convincing evidence. *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1296 (D.C. Cir. 2009).

## ARGUMENT

### I.     Plaintiffs Have No Likelihood of Success on their Due Process Claims

Plaintiffs argue that Defendants have violated the Fifth Amendment's due process clause by constructing border infrastructure on federal property, resulting in entrances of construction personnel and debris onto Plaintiffs' neighboring parcels.  Pls.' Br. in Supp. of Mot. for TRO, ECF No. 4-1 (Pls.' Br.) at 11.  This claim fails for at least two reasons.  First, even if Plaintiffs' allegations were true, mere trespass or negligence by government officials does not implicate the due process clause.  Second, Plaintiffs have meaningful post-deprivation remedies available to them through the Federal Tort Claims Act (FTCA) or an inverse condemnation action for a physical taking in the Court of Federal Claims.  Further, Plaintiffs' substantive due process claim is baseless.  The government has not intentionally harmed Plaintiffs' properties, nor has the government acted to mislead Plaintiffs, and bare speculation is an inappropriate basis to make those accusations.  Plaintiffs have no likelihood of success on the merits and this Court's inquiry into Plaintiffs' request for emergency injunctive relief need not go further.

#### A.  The Due Process Clause

"The Due Process Clause of the Fifth Amendment guarantees that '[n]o person shall . . . be deprived of life, liberty, or property, without due process of law.'"  *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993) (quotation omitted) (alteration in original).  The Due Process Clause bars arbitrary government action, *Zinermon v. Burch*, 494 U.S. 113, 125 (1990), and a procedural due process claim challenges the adequacy of the "procedural protections accompanying a deprivation of a protected interest such as life, liberty, or property." *Ciampi v. Zuczek*, 598 F. Supp. 2d 257, 263-64 (D.R.I. 2009) (citing *Zinermon*, 494 U.S. at 125). The requirements of due process may be satisfied through pre-deprivation hearings or through "adequate post-deprivation remedies."  *Rason v. Nicholson*, 562 F. Supp. 2d 153, 155 (D.D.C.

2008) (quoting *Dickson v. Mattera*, 38 Fed. App'x 21 (D.C. Cir. 2002)); *accord Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (holding that deprivation of property interest by state employee does not violate due process where there "is a meaningful postdeprivation remedy"); *Parker v. Brown*, 706 F. Supp. 2d 125, 128 n.3 (D.D.C. 2010) (describing the FTCA as an adequate remedy).

Thus, a procedural due process claim involves "a "familiar two-part inquiry': [courts] must determine whether the plaintiffs were deprived of protected property or liberty interests, and, if so, whether they received the process they were due." *Orange v. D.C.*, 59 F.3d 1267, 1273 (D.C. Cir. 1995) (quotation omitted); *accord Robbins v. Bureau of Land Mgmt.*, 252 F. Supp. 2d 1286, 1298-301 (D. Wyo. 2003) ("a plaintiff must allege that the government officials: (1) intentionally or recklessly, (2) deprived plaintiff of his property, and (3) there is no adequate post-deprivation remedy" (citing *Hudson*, 468 U.S. at 533; *Burton–Bey v. United States*, 100 F.3d 967 (10th Cir.1996)).

In contrast, substantive due process prevents arbitrary government action by barring oppressive government conduct. *Daniels v. Williams*, 474 U.S. 327, 331 (1986). "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense," *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (quotation and internal quotation marks omitted), and the Due Process Clause "does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." *Id.* at 848.

### B.   Trespass or Negligence by Government Officers or Contractors Does Not Violate the Due Process Clause

Even if true, Plaintiffs' allegations of entry of government officers, contractors, and debris onto remote areas of their properties amount to—at most—negligence and trespass to lands. Neither implicates the Due Process Clause. For negligence, the Supreme Court has been

clear: "the due process clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels*, 474 U.S. at 331 (emphasis in original).

Neither does trespass by government officers violate due process. "Although the definition of deprivation under the Due Process Clause is somewhat elastic, at a minimum it connotes a loss." *Robbins v. BLM*, 252 F. Supp. 2d 1286, 1298-301 (D. Wyo. 2003) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577–79 (1972)). Transient trespasses by government officers or contractors do not deprive Plaintiffs of their property, and "trespass does not become a violation of the Fifth Amendment simply because it was committed by a federal official." *Robbins*, 251 F. Supp. at 1298 (citing *Daniels*, 474 U.S. at 332-33). Numerous courts have held that mere trespasses by government actors do not violate due process. *See, e.g.*, *Andree v. Ashland County*, 818 F.2d 1306, 1315 (7th Cir. 1987) ("Even though such an entry may have been a trespass, that alone would not suffice to make out a constitutional violation." (citing *Oliver v. United States*, 466 U.S. 170 (1984)); *Collier v. City of Springdale*, 733 F.2d 1311, 1315, n.6 (8th Cir. 1984) ("a trespass to property, negligent or intentional, is merely a common law tort and does not infringe on the federal constitution." (quotation omitted)); *Wise v. Bravo*, 666 F.2d 1328, 1335 (10th Cir. 1981) ("a trespass to property, negligent or intentional, is a common law tort; it does not infringe the federal constitution"). For this reason, Plaintiffs' allegations of trespass by government officers or contractors do not describe a "deprivation of property" that would implicate the Due Process Clause.

### C. Plaintiffs Have Adequate Post-Deprivation Remedies Available through the FTCA or an Inverse Condemnation Proceeding

Even if implicated, Plaintiffs' Due Process Clause claims fail because there are adequate post-deprivation remedies available. "[T]he negligent or intentional deprivation of property

through the random and unauthorized acts of a state or federal employee does not constitute a deprivation of due process if 'a meaningful postdeprivation remedy for the loss is available.'" *Stuto v. Fleishman*, 164 F.3d 820, 825 (2d Cir. 1999); *accord Hudson*, 468 U.S. at 539 (O'Connor, J., concurring) ("The due process requirement means that Government must provide to the [plaintiff] the remedies it promised would be available." (citing *Parratt v. Taylor*, 451 U.S. 527, 537–544 (1981)). There are at least two post-deprivational remedies that Plaintiffs ignore: (1) a tort action under the Federal Tort Claims Act and (2) an inverse condemnation proceeding in the Court of Federal Claims.

The FTCA provides one meaningful post-deprivation remedy. The FTCA contains a limited waiver of sovereign immunity for tort claims against the United States, 28 U.S.C. §§ 1346(b)(1), 2674, subject to certain exclusions, *id.* § 2680(h), and an exhaustion requirement. *Id.* § 2675; *see also Levin v. United States*, 568 U.S. 503, 506-07 (2013) ("The [FTCA] gives federal district courts exclusive jurisdiction over claims against the United States for 'injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission' of federal employees acting within the scope of their employment." (quoting 28 U.S.C. § 1346(b)(1)). Several courts have held that the existence of a remedy under the FTCA precludes a due process claim. *See, e.g.*, *Timberline Nw., Inc. v. Hill*, 141 F.3d 1179 (9th Cir. 1998) (holding that plaintiff had not demonstrated that post-deprivation remedies under the FTCA were inadequate); *Rodriguez-Mora v. Baker*, 792 F.2d 1524, 1527 (11th Cir. 1986) ("the existence of a postdeprivation remedy under the FTCA will preclude the Fifth Amendment challenge."); *contra Walters v. Wolf*, 660 F.3d 307, 313 (8th Cir. 2011) ("when an *established* state procedure deprives one of property, postdeprivation remedies generally fail to satisfy *Mathews*" (emphasis added)).

The FTCA allows for actions at trespass against the United States, *Simons v. United States*, 431 F.2d 531, 533 (5th Cir. 1969), although "a plaintiff must exhaust administrative remedies before bringing an FTCA claim to federal court."  *Slate v. D.C.*, 79 F. Supp. 3d 225, 233 (D.D.C. 2015) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993); 28 U.S.C. § 2675(a)).  This includes actions for continuing trespass from materials left on a plaintiff's land.  For example, in *Anderson v. United States*, the plaintiff proved that a contractor "entered upon plaintiffs' land and there dug a trench, constructed a dike[,] and deposited the by-product of its dredging operation . . . . for the benefit of and on behalf of the United States of America,' as provided in the contract between [the contractor] and the United States."  259 F. Supp. 148, 149 (E.D. Pa. 1966).  The district court held that this conduct was "a continuing trespass" and that "[s]uch a tort is actionable under the Tort Claims Act."  *Id.* at 150 (citation omitted).[3]

The FTCA also allows plaintiffs to pursue actions for negligent hiring and supervision of contractors.  For example, in *Melton v. United States*, the plaintiff participated in a government redevelopment program where her rental property was supposed to be renovated by government-selected and supervised contractors.  488 F. Supp. 1066, 1068-69 (D.D.C. 1980).  Things did not go to plan: "through vandalism and neglect, the property ha[d] been essentially gutted."  *Id.* at 1070.  The court held that the government could be liable for negligent hiring and supervision, *id.* at 1074, and entered judgment for the plaintiff.  *Id.* at 1075.

The FTCA thus provides a meaningful post-deprivation remedy for redress of Plaintiffs' alleged injuries.  Alternatively, Plaintiffs may seek a remedy through an inverse condemnation

---

[3] Nothing before the Court suggests that CBP authorized the contractor to deposit rockfall on Plaintiffs' parcel; just the opposite.  Enriquez Decl. ¶ 17.  But even if Plaintiffs could show the government authorized rockfall on their property, that action would still only be an ordinary trespass and plaintiffs would have a remedy through the FTCA.  *Anderson*, 259 F. Supp. at 150.

proceeding in the Court of Federal Claims.  An inverse condemnation action for just compensation is the remedy for a physical taking by the government.  *See Presley v. City of Charlottesville*, 464 F.3d 480, 489-91 (4th Cir. 2006) (describing an inverse condemnation action as "all the process to which [the plaintiff] is due").  Under well-established precedent, the government is not required to provide notice or a hearing before a physical taking for public use. *Id.* (citing *Bragg v. Weaver*, 251 U.S. 57, 58 (1919); *Joslin Mfg. Co. v. City of Providence*, 262 U.S. 668, 670, 678, (1923); *Schroeder v. City of New York*, 371 U.S. 208, 212–13 (1962)). "Rather, when the alleged deprivation is effectively a physical taking, procedural due process is satisfied so long as private property owners may pursue meaningful postdeprivation procedures to recover just compensation."  *Presley* 464 F.3d at 489–91 (citing *Bailey*, 326 U.S. at 205; *Fulcher v. United States*, 632 F.2d 278, 291 (4th Cir. 1980) (en banc) (Phillips, J., concurring)). To the extent Plaintiffs allege the government's actions here are a physical taking, their remedy is an inverse condemnation action in the Court of Federal Claims under the Tucker Act.[4]  28 U.S.C. § 1491(a)(1).

Due process is not implicated by ordinary negligence or trespass by government officers or contractors.  Even if implicated, due process is satisfied by the meaningful post-deprivation remedies available to Plaintiffs through the FTCA or an inverse condemnation action in the Court of Federal Claims.  Plaintiffs' procedural due process allegations fail and cannot support preliminary relief.[5]

---

[4] If Plaintiffs seek less than $10,000 in compensation, the District Court and the Court of Federal Claims would have concurrent jurisdiction.  28 U.S.C. § 1346(a)(2).

[5] The government does not concede liability under any theory here listed, and the adequacy of a post-deprivation remedy does not turn on whether the claim is ultimately successful. *See, e.g.*, *Trusty v. Centurion Health Servs.*, No. 19-5872, 2020 WL 548225, at *3 (6th Cir. Jan. 7, 2020) ("Lack of success in pursuing a post-deprivation remedy does not mean that the remedy is inadequate." (citing *Aruanno v. Johnson*, 501 F. App'x 151, 153 (3d Cir. 2012)).

### D.  Plaintiffs' Substantive Due Process Claim is Meritless

"While substantive due process allegations are of course context specific, they are reserved to render relief only in the 'truly horrendous situations'"  *Ciampi v. Zuczek*, 598 F. Supp. 2d 257, 263–64 (D.R.I. 2009) (quoting *Clark v. Boscher*, 514 F.3d 107, 112 (1st Cir. 2008)) (internal citation omitted).  For example, in *Rochin v. California*, the Supreme Court held that forced stomach pumping of an individual to obtain evidence to use against him shocks the conscience.  342 U.S. 165, 172-73 (1952).  Since, the Court has "repeatedly adhered to *Rochin*'s benchmark." *Lewis*, 523 U.S. at 847 (citing cases).

Plaintiffs' allegations do not approach the *Rochin* benchmark.  Neither trespass nor negligence constitute an abuse of power that shocks the conscience, nor does mere "bureaucratic bungling."  *See Nazelrod v. Garrett Cty. Sanitary Dist., Inc.*, 241 F. Supp. 2d 532, 538-40 (D. Md. 2003).  Regarding the accusations directed at Mr. Enriquez, several of Plaintiffs' allegations are simply false.  In response to Mr. Goodwin's concerns, the contractor implemented measures to prevent rockfall on Plaintiffs' property.  Enriquez Decl. ¶ 19.  Now that blasting is complete, the contractor is implementing additional mitigations that should prevent any additional rockfall. Second Gant Decl. ¶ 28.  That Mr. Goodwin was not satisfied with the results does not mean the agencies ignored his concerns or did not act in good faith.  The accusation that Mr. Enriquez "tolerat[ed]" or "encourag[ed] the contractor's acceleration of intrusions and damage to [Plaintiffs'] property," Goodwin Decl. ¶ 53, is also false.  Mr. Enriquez is not a blasting expert and did not approve the blasting plans.  *See* Enriquez Decl. ¶ 19.  Nor would Mr. Enriquez direct government officers or contractors to harm Plaintiffs or their property.  *Id.*  Mr. Goodwin's speculation is a woefully inadequate basis to accuse a long-time civil servant like Mr. Enriquez of misconduct.

13

"[T]he due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." *Lewis*, 523 U.S. at 848. Nor is substantive due process "a 'font of tort law to be superimposed upon whatever systems may already be administered by the [government.]'" *Id.* (quoting *Paul v. Davis*, 424 U.S. 693, 701 (1976)). Rather, a violation of substantive due process "must be stunning, egregiously unacceptable, outrageous, or conscience-shocking," *Ciampi*, 598 F. Supp. 2d at 263 (citing *Amsden v. Moran*, 904 F.2d 748, 754 (1st Cir. 1990)), and "[c]harges that substantive due process was denied cannot rest on conclusory allegations or rhetoric alone (even impassioned rhetoric)." *Amsden*, 904 F.2d at 757. On these facts, Plaintiffs' substantive due process claim should not have been pleaded and, consequently, cannot support preliminary emergency injunctive relief.

## II.     Plaintiffs Fail to Establish Irreparable Harm

Plaintiffs have failed to demonstrate an irreparable harm to their interests in the absence of a preliminary injunction. "The D.C. Circuit 'has set a high standard for irreparable injury.'" *Cal. Ass'n of Private Postsecondary Schools v. DeVos*, 344 F. Supp. 3d 158, 170 (D.D.C. 2018) (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)); *see also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1171 n.6 (9th Cir. 2011) ("[A] plaintiff may establish standing to seek injunctive relief yet fail to show the likelihood of irreparable harm necessary to obtain it.").

Plaintiffs must make two showings by "clear and convincing" evidence to demonstrate irreparable harm sufficient to justify the extraordinary remedy of emergency injunctive relief. *Nat'l Fair Housing All. v. Carson*, 330 F.Supp.3d 14, 62–63 (D.D.C. 2018). "First, the harm must be 'certain and great,' 'actual and not theoretical,' and so 'imminent that there is a clear and

present need for equitable relief to prevent irreparable harm.'" *League of Women Voters*, 838

F.3d at 7-8 (quoting *Chaplaincy*, 454 F.3d at 297).  Second, Plaintiffs must show that the harm is

"beyond remediation."  *Carson*, 330 F. Supp. 3d 14, 62–63 (D.D.C. 2018) (quoting *League of*

*Women Voters*, 838 F.3d at 8.).  "As with the likelihood of success on the merits prong, . . .

plaintiff[s] bear[] the burden of showing that [they] will suffer irreparable injury."  *See Sierra*

*Club v. U.S. Dept. of Energy*, 825 F. Supp. 2d 142, 152 (D.D.C. 2011) (citing *Winter*, 555 U.S. at

22).

Plaintiffs rely on four injury theories: (1) past injury from rockfall on their properties,

primarily associated with blasting activities; (2) future risk of rockfall associated with ongoing

construction; (3) future injury from potential flooding associated with the planned Guadalupe

Creek crossing; and (4) harm from the alleged deprivation of their due process rights.  Pls.' Br.

16-17.  None satisfy Plaintiffs' burden.

First, the plain focus of Plaintiffs' motion is an alleged risk of harm to their real property

from blasting activities on federal land.  Pls.' Br.  5, 7, 11, 16.  Blasting adjacent to Plaintiffs'

lands ended on November 19, and thus poses no imminent risk.  So, even accepting Plaintiffs'

characterizations, Plaintiffs' blasting allegations do not warrant prospective relief.  *See Schrier v.*

*Univ. Of Co.*, 427 F.3d 1253, 1267 (10th Cir. 2005) ("The purpose of a preliminary injunction is

not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result

without their issuance." (citation omitted)).  Given Defendants representations to Plaintiffs and

the Court that blasting adjacent to Plaintiffs' properties is over—and that notice will proceed any

resumption—Plaintiffs cannot show an imminent harm from blasting.  *See City of Los Angeles v.*

*Lyons*, 461 U.S. 95, 105-07 (1983) (holding that standing to seek an injunction requires

likelihood of future injury).

15

Second, ongoing construction activities should not result in any additional rockfall on Plaintiffs' land.  The contractor plans to utilize rock bolts and mesh to prevent large rocks from rolling down onto Plaintiffs' property and debris netting to prevent smaller debris from migrating off federal land.  Second Gant Decl. ¶ 28(a)-(b).  Additionally, the contractor is seeking a temporary construction easement to adjust the slope in the construction area to prevent further rockfall.  *Id.* ¶ 28(c).  These measures should be sufficient to prevent additional impacts to Plaintiffs' lands.  *Id.* ¶ 28.  But even if some small amount of incidental, additional rockfall does land on Plaintiffs' side of the mountain:

> [t]he key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm.

*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297–98 (D.C. Cir. 2006) (quoting *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam)).  Plaintiffs offer nothing on this point beyond conclusory assertions that rockfalls "are permanent" and "can perhaps be mitigated but cannot be undone."  Pls.' Br. 16.  Plaintiffs own photographs demonstrate that the rocks are confined to small, remote portions of Plaintiffs' lands adjacent to the international border.  ECF 4-9 at 4-12.  The area is rugged, rocks and boulders are a natural part of the landscape, and there is no reason any damage cannot be remediated.  See Enriquez Decl. ¶ 10.  In fact, the contractor has already proposed using topsoil and reseeding to restore vegetation to the original boundary line.  Second Gant Decl. ¶ 28(c).  Some possibility of additional, incremental rockfall is not an irreparable harm warranting equitable relief.

Third, Plaintiffs speculate that the Guadalupe Creek crossing, once installed, will create a "permanent and irreparable" risk of flooding.  Pls.' Br. 16.  Plaintiffs focus specifically on the alleged risk of a private road washing out "as it has done in the past."  Pls.' Br. 9.  The

government has rainfall records from the National Oceanic and Atmospheric Administration and is aware of the flooding risk in the area. Second Gant Decl. ¶¶ 30-33. The final design for the crossing is still under review, and the agencies are considering ways to mitigate against debris clogging the culverts. *Id.* ¶ 34. Plaintiffs will have an opportunity to review the final design and provide feedback. *Id.* ¶ 37. And even assuming Plaintiffs' speculation is correct—which is impossible to know at this time—government-induced flooding is not irreparable. *See Ark. Game & Fish Comm'n v. United States*, 568 U.S. 23, 38 (2012) (holding that temporary flooding may be a taking under the Fifth Amendment).

Fourth, Plaintiffs argue that "the deprivation of due process rights alone constitutes irreparable harm." Pls.' Br. 16. This is indistinct from Plaintiffs' merits arguments and fails for the same reasons. As explained above, Plaintiffs' allegations of trespass and negligence do not implicate due process. Even if they did, Plaintiffs cannot rely on past injuries alone for prospective injunctive relief. *See Lyons*, 461 U.S. at 102 (holding that plaintiffs seeking prospective injunctive relief must show "more than past exposure to illegal conduct"). Finally, Plaintiffs cannot complain of a lack of due process while ignoring the processes available to them, either at tort under the FTCA, or through an inverse condemnation proceeding. *Hudson*, 468 U.S. at 533 ("For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy.").

Plaintiffs have not shown an imminent, irreparable harm to their interests warranting preliminary relief. The blasting crews are gone, moving farther away from Plaintiffs' properties each day as they continue their work eastward. They will not return without notice to both Plaintiffs and the Court. Plaintiffs' touted YouTube video is thus of no moment. Past harms do

17

not warrant prospective relief, *see Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) ("Finally, because [the plaintiff] seeks prospective declaratory and injunctive relief, he must establish an ongoing or future injury that is 'certainly impending'; he may not rest on past injury." (quoting *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013)), and Plaintiffs have available remedies for physical damage to their properties.  No injunction should issue.

### III.    The Balance of Equities and Public Interest Weigh Against an Injunction

In considering the extraordinary remedy of a preliminary injunction, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (internal quotations and citations omitted).  And, "[i]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences" that would issue from an injunction. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).  Where, as here, an injunction is sought against the government, these inquiries largely merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

DHS has determined that this portion of Southeastern Arizona is an area of high illegal entry and exhibits high rates of drug smuggling between ports of entry.  Enriquez Decl. ¶ 6.  The Supreme Court has recognized that the Government has "compelling interests in safety and in the integrity of our borders," *Nat'l Treasury Employees Union v. Von Raab*, 489 U.S. 656, 672 (1989), whereas an injunction would prohibit the Government from taking necessary steps to prevent illegal drugs from entering the country. *See United States v. Guzman-Padilla*, 573 F.3d 865, 889 (9th Cir. 2009) (acknowledging the government's "strong interest[]" in "interdicting the flow of drugs").  Likewise, halting construction in progress would impose substantial costs on the government associated with suspending construction.  Second Gant Decl. ¶¶ 38-39.  DoD

would have to pay these additional, unnecessary costs from the funds available for border barrier construction, reducing the money available for construction. *Id.*

In staying an injunction issued by the Northern District of California against other border barrier projects, the Supreme Court has already determined that the harm to the Government from an injunction prohibiting border barrier construction outweighs allegedly irreparable interests similar to those alleged here. *See Trump v. Sierra Club*, 140 S. Ct. 1 (2019). In granting that stay, the Court necessarily found that the balance of the harms and the public interest favors the Government. *See Nken*, 556 U.S. at 434–35. Plaintiffs allege only the possibility of some inadvertent and incidental harms to rugged and remote portions of their properties. By contrast, the *Sierra Club* plaintiffs alleged construction projects had caused, and would continue to cause, environmental harm over a much wider area. *See Sierra Club v. Trump*, 379 F. Supp. 3d 883, 923-25 (N.D. Cal. 2019), *aff'd*, 963 F.3d 874 (9th Cir. 2020), *cert. granted*, No. 20-138, 2020 WL 6121565 (U.S. Oct. 19, 2020) (discussing allegations of environmental harm). Nonetheless, the Supreme Court granted a stay despite those concerns, and recently denied a motion to lift that stay. *See Trump v. Sierra Club*, 140 S. Ct. 2620 (2020). There is no basis for this Court to reach a different outcome than the Supreme Court.

Indeed, since the Supreme Court issued its stay in July 2019, courts have either denied or stayed injunctions prohibiting construction of border barrier projects. *See El Paso Cty., Texas v. Trump*, No. 19-51144, 2020 WL 7090797, at *2 (5th Cir. Dec. 4, 2020) (explaining stay of injunction); *La Posta Band of Diegueno Mission Indians of La Posta Reservation v. Trump*, 828 F. App'x 489, 490 (9th Cir. 2020) (affirming denial of injunction); *California v. Trump*, 407 F. Supp. 3d 869, 907 (N.D. Cal. 2019) (staying injunction). As Judge Gilliam recognized, "the Supreme Court's stay of this Court's prior injunction order appears to reflect the conclusion of a

majority of that Court that the challenged construction should be permitted to proceed pending resolution of the merits." *California*, 407 F. Supp. 3d at 907.  Again, there is no basis for a different result here.

"The factors examined above—the balance of equities and consideration of the public interest—are pertinent in assessing the propriety of any injunctive relief, preliminary or permanent." *Winter*, 555 U.S. at 32 (citation omitted).  The United States' compelling interest in stopping the flow of illegal drugs and unknown persons into the United States outweighs Plaintiffs' speculation that additional, incremental rockfall will negatively impact remote areas of their properties.  The Supreme Court has already necessarily recognized the substantial weight due to national security interests in the preliminary injunction analysis.  *Sierra Club*, 140 S. Ct. at 1.  Because the equities favor the government, this Court should deny Plaintiffs' request for a preliminary injunction.

## CONCLUSION

The section of border wall at issue in this case is an important tool to curb drug trafficking and other cross-border crime in southeastern Arizona.  There is no dispute that the construction of the border wall has caused some *past* injury to remote portions of Plaintiffs' real property.  But that does not mean that Defendants' past conduct violated the Constitution, let alone that its *future* conduct will.  Nor have Plaintiffs shown that any possible future injury to these remote parts of Plaintiffs' properties would be "certain and great" or could not be remedied either through on-the-ground remediation or through money damages.  Finally, the government's compelling interests in deterring and interdicting criminal activity on the southern border outweigh any potential future harm to Plaintiffs.

Plaintiffs have multiple avenues through which to seek a remedy, though none presently involves an action in the District Court.  They cannot sidestep those processes and then bemoan a lack of due process.  Because Plaintiffs cannot meet their heavy burden for establishing a basis for extraordinary interim relief, no emergency injunction should issue.

Respectfully submitted this 14th day of December, 2020,

PAUL E. SALAMANCA
Deputy Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

*/s/ Tyler M. Alexander*
TYLER M. ALEXANDER
Trial Attorney
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044-7611
Tel:  (202) 305-0238
Fax: (202) 305-0506
tyler.alexander@usdoj.gov

21